# R. T. PHILLIPS *v.* ARKANSAS REAL ESTATE COMMISSION

5-4437                          426 S. W. 2d 412

Opinion delivered April 15, 1968

*Thomas D. Ledbetter,* for appellant.

*Griffin Smith,* for appellee.

CARLETON HARRIS, Chief Justice. This action was instituted by appellee in the Pulaski Chancery Court by complaint against appellant, R. T. Phillips, a resident of Jasper, Newton County, wherein appellee, Arkansas Real Estate Commission, asserted that appellant had been guilty of violating the statutes generally known as

the Arkansas Real Estate Brokers Act.[1] The complaint, in effect, alleges that Phillips acted as a real estate agent, without being licensed, in handling a real estate transaction between Keith J. Smith of Houston, Texas, and Don and Darlene Gronwaldt, residents of Newton County. More specifically, it was asserted that on October 24, 1966, Phillips prepared and forwarded to Smith an option to purchase the property from Phillips for the sum of $34,000.00. Consideration for the option was $3,000.00, which Smith forwarded on November 4, when returning the executed instrument. On November 5, 1966, Phillips secured an option to purchase the Gronwaldt land, in his own name, the consideration being $2,000.00, and the price of the property being set at $24,000.00. Summons was issued and served on Phillips, and appellant filed a demurrer. The Chancellor overruled this pleading, and Phillips then filed an answer, in which he admitted that he held no license to act as a broker or agent; admitted that he was a party to the two executed contracts, but it was denied that appellant had acted as a real estate agent, and it was asserted that his acts were not in violation of any law. The deposition of Smith was taken in Texas, and the case was set for trial. Phillips moved for a continuance, alleging that he was unable to attend court because of illness; however, he did not present the motion to the court, nor appear with any evidence to support it. The court held that no adequate grounds for continuance had been shown, and overruled the motion. Some time subsequent thereto, the case proceeded to trial, Phillips not being present. Appellee offered the deposition of Keith Smith, and the testimony of Don Hadfield, secretary of the real estate board, and Don Gronwaldt, and copies of the option agreements between the Gronwaldts and Phillips, and Smith and Phillips were offered in evidence. The court found that Phillips had:

"* * * violated the Arkansas Real Estate Brokers

---

[1]This action was brought under the provisions of Ark. Stat. Ann. § 27-603 (Repl. 1962).

Act, Ark. Stats. S. 71-1302, by entering an agreement with Mr. and Mrs. Gronwaldt to sell their land, known as Buffalo Basin Guest Ranch, to Mr. and Mrs. Keith Smith, for compensation, and in so doing acted as a real estate broker, without being licensed.''

Appellant was enjoined from acting as a real estate broker until he was issued a valid license by the Arkansas Real Estate Commission, the decree enjoining him from committing the acts set out in the first paragraph of Ark. Stat. Ann. § 71-1302 (Repl. 1957), and further:

''* * * from taking options on real estate for the purpose of effectuating a sale by the owner to a third party, or arranging for options taken in another's name in order to effectuate sale.''

He was also specifically enjoined from attempting to enforce any rights out of the transaction in which he participated concerning the sale of Buffalo Basin Guest Ranch.

This decree was entered on June 13, 1967, and on June 30, appellant moved the court to alter its decree, again asserting that he had not violated the Arkansas Real Estate Brokers Act, and contending that the provisions of the decree went beyond the scope of the relief sought by appellee in its complaint. This motion was denied. Thereupon appellant gave notice of appeal. On August 17, appellee moved the trial court to cite appellant to show cause why he should not be punished for contempt, it being alleged that Phillips was seeking to enforce contract rights under his option from the Gronwaldts to purchase their property. The matter of contempt is being held in abeyance until this court passes on the validity of the court's original decree.

Phillips relies upon several points for reversal, which we proceed to discuss. It is first asserted that appellant was entitled to all constitutional guarantees of

criminal proceedings, because the Arkansas Real Estate Brokers Act is criminal in nature. This assertion is based on the fact that Ark. Stat. Ann. § 71-1301 (Repl. 1957) provides that one who acts as a real estate broker or salesman in Arkansas without first having obtained a license is guilty of a misdemeanor, and subject to fine and imprisonment. Appellant argues that the present action is a criminal action, and he is entitled to a jury trial in the county in which the alleged crime was committed (Newton County), and that his rights have been violated. We do not agree, and this point has been decided contrary to appellant's contention. In *Hudkins* v. *Arkansas State Board of Optometry*, 208 Ark. 577, 187 S. W. 2d 538, a similar argument was presented, and this court disagreed, saying:

"* * * the relief sought by those complaining was not to enjoin the commission of a crime, as such. The purpose, primarily, was to prevent illegal practice of optometry. Cessation of the practice—not punishment for past acts—was the end.

"The Board has nothing to do with prevention of crime; nor is it concerned with punishment. But under § 15 of Act 94 it is authorized to invoke injunctive aid as a means of protection."

Here, also, the real estate commission is not concerned with punishment, but is rather invoking injunctive aid, which is authorized by Ark. Stat. Ann. § 71-1311, as follows:·

"Upon petition of any member of the Commission [real estate], its secretary, or any holder of a license thereunder, the chancery court shall enjoin a violation of this Act if and when it shall appear that such action is necessary to protect the interest of those who have complied with the terms of this Act and who are operating legitimately."

Appellant next makes an attack on the constitution-

ality of the act, asserting that, "The rights to contract and to hold property are more fundamental than the laws of the land." We need not discuss this contention, since the act, now under attack, was held constitutional in the case of *State* v. *Hurlock*, 185 Ark. 807, 49 S. W. 2d 611..

The deposition of Keith Smith relates that Smith, while riding through Jasper, saw a sign in a store occupied by Phillips, "Land for Sale." He met with Phillips and was shown 200 acres of land, which was owned by appellant, and Smith purchased it from him. Later, they again met, and discussed the possibilities of building a home on that tract. According to the witness, Phillips then stated that he could show a piece of land to Smith that already had a home on it, and the two went to the lodge known as the Buffalo Basin Guest Ranch, owned by the Gronwaldts, and obtained their permission to look over the premises. Smith was interested in purchasing the property, and Phillips told him that it could be bought for $24,000.00, plus the 200 acres purchased, or $34,000.00 cash. After Smith returned to Texas, several telephone conversations were engaged in between Smith and Phillips. Smith said that Phillips was not quite sure that he would be able to trade in the 200 acres, "and he suggested then that he would send an option agreement, and by the time he sent the option agreement he said it could not longer be bought for a $2,000.00 payment on the option, that it had to be $3,-000.00." Appellant requested that Smith send him the money to buy the option, and the witness mailed Phillips a check in the amount of $3,000.00. Smith's evidence is the only evidence that appears of record, though Gronwaldt, owner of the property involved, also testified, along with Don Hadfield; the testimony of these two witnesses was not reported.

Appellant contends that the court's original decree went much farther than permitted by the pleadings, stating:

"In the instant case the only prayer for relief was that appellant 'be enjoined from *further* [our emphasis] violation of the Arkansas Real Estate Brokers Act.' Under the decree and permanent injunction appellant is not only prohibited from acting as real estate broker, but he also is 'enjoined from attempting to enforce any rights out of the transaction in which he participated concerning the sale of Buffalo Basin Guest Ranch.' It is this final portion of the decree which appellant asserts is not within the scope of relief sought and should not have been granted in a judgment taken by default, at which appellant was not present."

Appellant apparently takes the position that the court's injunction was only properly applicable to all transactions which might commence subsequent to the date of such injunction, and he argues that, in prohibiting him from proceeding further with the Smith-Gronwaldt transaction, the court granted relief which was not sought in the complaint. We do not agree. The complaint very definitely is based on appellant's dealings with Smith and Gronwaldt, and if that relationship was in violation of the Arkansas Real Estate Brokers Act, certainly the court had a right to enjoin Phillips from endeavoring to enforce any alleged rights concerning the sale of the Buffalo Basin Guest Ranch.[1a] The law does not permit a man to violate the law, even once, and an injunction from "further violation of the Arkansas Real Estate Brokers Act" applies just as much to further acts in connection with enforcing the agreement in question (if it is unlawful), as to future transactions, which have never yet commenced. Of course, appellant's argument is based on the premise that no violation was committed, *i. e.*, Phillips was only contracting to buy property for himself (from Gronwaldt) and then intend-

---

[1a]The record reflects that Phillips has instituted a suit in the Newton County Chancery Court, wherein it is asserted that the Gronwaldts are "currently in the process" of transferring the ranch to Smith (by-passing appellant), and he asks for specific performance of his own contract, or damages against the defendants.

ed selling that same property to Smith. In other words, Smith was buying the property—not from Gronwaldt—but from Phillips.

The record does not bear out appellant's contention. In the first place, he escorted Smith to see, and encouraged him to buy, a piece of property which did not belong to appellant, but belonged to the Gronwaldts. It is true that Phillips, in preparing his option with Smith, presented himself as the owner, but it is noticeable that he did not acquire the option from Gronwaldt until after he received Smith's check (November 5, 1966)—and it might be added that there is no evidence in the record that he was borrowing money from Smith in order to buy the property. On October 24, 1966, the date of the option from Phillips to Smith, appellant had no interest in the Gronwaldt property at all. Other pertinent language appears in the Phillips to Smith option. After setting out (on a printed option form) that Phillips and his wife would convey the property to Smith, the following words are typed into the instrument, "or cause to be done." This, of course, can only mean that Phillips will either deed the property himself or get the Gronwaldts to do it. In handling both ends of this transaction, Phillips stood to make $1,000.00 on the option (obtaining option from Gronwaldt for $2,000.00, and giving option to Smith for $3,000.00), and on the entire transaction, he stood to make a profit of $10,000.00 (agreeing to buy the property from Gronwaldt for $24,-000.00, and agreeing to sell it to Smith for $34,000.00). Of course, the amount of profit made would have no bearing on this litigation if a bona fide sale of appellant's own property were involved. But we cannot agree that this was that sort of transaction.

We think the instruments offered into evidence, and Smith's testimony, make it clear that the proposed "purchase" by Phillips was only a means used to evade the statute in question, and it must also be remembered that Mr. Gronwaldt testified. The testimony of Gron-

waldt and Hadfield apparently was not taken for the record, and we have no idea what the former testified to, but certainly it dealt with his transaction with Phillips. We have said many times that where there is a failure to bring into the record the testimony presented to the trial court, it must be presumed that the testimony was sufficient to support the findings of the court.[2] In *Watson* v. *Jones,* 233 Ark. 203, 343 S. W. 2d 415 (1961), this court stated:

"'* * * We have held in many instances that where there is a failure to bring into the record the testimony presented to the trial court, it must be *conclusively presumed* [our emphasis] that the testimony supported the trial court's findings. [Citing cases]'"

In the case before us, this simply means that there is a conclusive presumption that the testimony of Mr. Gronwaldt, and that of Don Hadfield, supported the finding of the trial court that appellant had violated the Arkansas Real Estate Brokers Act.

We agree with appellant that the prayer for relief in appellee's complaint cannot be amended, or broadened, since appellant did not appear for trial. But we do not agree that that happened in this instance. The complaint alleges that Phillips had no license (which is admitted by appellant), and sets out the transactions between Phillips, Gronwaldt, and Smith; it is asserted that these acts are violative of the Arkansas Brokers Act, and the prayer is that Phillips be enjoined from further violation. We think the evidence in the record, and also under our holdings, that which is not in the record, supports the findings of the Chancellor and justifies the relief which was sought.

Affirmed.

[2]This is not an instance where the record was abbreviated by agreement, or without objection, as provided in Section 12 of Act 555 of 1953.