2010 Ark. App. 272

**Kevin MASSEY, Appellant**

v.

**Morris Dee FULKS and James Winters, Executors of the Estate of Derek Cockayne, Deceased, and the Estate of Derek Cockayne, Appellees.**

No. CA 09–1082.

Court of Appeals of Arkansas.

March 31, 2010.

Gregory Klebanoff, Fayetteville, AR, for appellant.

Blair Arnold, Murphy, Thompson, Arnold, Skinner & Castleberry, Batesville, AR, for appellee.

ROBERT J. GLADWIN, Judge.

Appellant Kevin Massey contends that the Stone County Circuit Court erred in granting summary judgment to appellees, the Estate of Derek Cockayne and the executors of the Estate, Morris Dee Fulks and James Winters (referred to hereafter as the Estate), prohibiting Massey's claim against the Estate for failure to comply

with Arkansas Code Annotated section 28–50–101 (Supp.2009), the statute of non-claim. Massey contends that he should have been given two years to file his claim as a known creditor of the Estate pursuant to the statute of non-claim and that *Dodson v. Charter Behavioral Health System of Northwest Arkansas, Inc.*, 335 Ark. 96, 983 S.W.2d 98 (1998), should be overturned because it is at odds with statutory law. We affirm the trial court's order.

### Statement of Facts

Massey filed a tort suit in circuit court on behalf of his minor daughter, naming the Estate and its representatives as defendants on February 11, 2008. The complaint alleged battery, false imprisonment, and outrage based on allegations that Derek Cockayne had sexually molested Massey's child in August and September 2007. Cockayne committed suicide when the Stone County Sheriffs Department was trying to serve him with an arrest warrant. His estate filed a timely answer on February 21, 2008.

The Estate filed an amended answer and motion for summary judgment on March 19, 2009, contending that Massey's complaint should be dismissed because he had filed the complaint in circuit court but had neglected to file a claim against the Estate in probate court. The Estate argued that Arkansas Code Annotated section 28–50–101, the statute of non-claim, bars all tort actions against estates not filed in probate court within six months of notice by publication to creditors. Massey responded that he was a known or reasonably ascertainable creditor of the Estate, he had not been served with actual notice of the probate filing, and that Arkansas Code Annotated sections 28–50–101(h) and 28–40–111(a)(1) and (4) (Supp.2009) grant-

ed him a two-year statute of limitations to perfect his claim against the Estate. The Estate countered that Massey's argument had been considered and rejected by the Arkansas Supreme Court in *Dodson, supra,* and other cases. The trial court granted summary judgment to the Estate and dismissed Massey's case on June 1, 2009. A timely notice of appeal was filed, and this appeal followed.

### Statement of Law

Normally, we determine if summary judgment is proper based on whether evidentiary items presented by the moving party leave a material fact unanswered, viewing all evidence in favor of the non-moving party. *Selrahc Ltd. Partnership v. Seeco, Inc.*, 2009 Ark. App. 865, 374 S.W.3d 33, 2009 WL 4840206. However, in cases such as this where the parties do not dispute the essential facts, we simply determine whether the moving party was entitled to judgment as a matter of law. *Id.* When the facts are not at issue but possible inferences therefrom are, we will consider whether those inferences can be reasonably drawn from the undisputed facts and whether reasonable minds differ on those hypotheses. *Flentje v. First Nat'l Bank of Wynne,* 340 Ark. 563, 11 S.W.3d 531 (2000).

### Statute of Non–Claim

Massey argues that he was a known or reasonably ascertainable creditor of the Estate pursuant to Arkansas Code Annotated section 28–50–101(h), which states in pertinent part as follows:

> Notwithstanding any other provisions of this section to the contrary, the claims of all known or reasonably ascertainable creditors shall be barred at the end of

two (2) years from date of first publication of notice to creditors, even if they have not been provided actual notice in accordance with § 28–40–111(a)(4).

He further cites Arkansas Code Annotated section 28–40–111(a)(1), which provides:

(A) Promptly after the letters have been granted on the estate of a deceased person, the personal representative shall cause a notice of his or her appointment to be published stating the date of his or her appointment and requiring all persons having claims against the estate to exhibit them, properly verified to him or her, within six (6) months from the date of the first publication of the notice, or they shall be forever barred and precluded from any benefit in the estate.

(B) Claims for injury or death caused by the negligence of the decedent shall also be filed within six (6) months from the date of first publication of the notice, or they shall be forever barred and precluded any benefit in the estate.

Finally, Massey cites Arkansas Code Annotated section 28–40–111(a)(4), which states that within one month after the first publication of the notice, a copy of the notice shall also be served upon each heir and devisee whose name and address are known and upon all unpaid creditors whose names, status as creditors, and addresses are known to or reasonably ascertainable by the personal representative. Ark.Code Ann. § 28–40–111(a)(4)(A).

Massey contends that, taken together, these statutes logically require that, within one month of initial publication of notice to creditors, known or reasonably ascertainable creditors be given actual notice of the

appointment of a personal representative as well as actual notice of the six-month statute of limitations governing claims against an estate. He maintains that, in the absence of said notice, the statute of limitations is extended to two years. Massey argues that he was a known or reasonably ascertainable creditor of the Estate from the time he filed his complaint against the Estate on February 11, 2009, in circuit court, and served copies upon the Estate's executors. He points out that the Estate's counsel admitted knowledge of the tort claim when he argued to the trial court, "[t]here is no question we knew this tort claim was out there. . . ." Massey claims that because he had no actual notice as required by statute, he has a right to a two-year statute of limitations to perfect his claim against the Estate.

### Dodson v. Charter Behavioral Health System of Northwest Arkansas, Inc.

Massey argues that the holding of Dodson is diametrically opposed to the relevant statute and that the trial court erred in granting the Estate's motion for summary judgment on its basis. In Dodson, the plaintiff filed a tort claim against a decedent's estate in civil court and served the administrator, but neglected to file a claim against the estate itself in probate court. Dodson, supra. The trial court held that the defendant had been adequately served and denied the defendant's motion for a summary-judgment dismissal. Id. However, the Arkansas Supreme Court reversed, holding that Arkansas Code Annotated section 28–50–101, the statute of non-claim, barred any tort actions against decedents' estates not filed in probate court within six months of publication of notice to creditors. Id.

Massey contends that Dodson is squarely at odds with section 28–50–101, as well

as sections 28–40–111(a)(1) and (4), which require that known or reasonably ascertainable creditors be given actual notice of the appointment of an estate's personal representative within one month of said appointment, as well as actual notice of the six-month limitations period to perfect their claims against an estate. Massey argues that, without that notice, known or reasonably ascertainable creditors should have two years to perfect their claims.

Massey urges that, even acknowledging the strong presumption in the validity of prior decisions and the rationale for stare decisis, citing *Bharodia v. Pledger,* 340 Ark. 547, 11 S.W.3d 540 (2000), prior decisions yielding unjust results should be overruled. Massey states in his brief that, "The appellee's argument that *Dodson* should be rigorously applied for purposes of judicial economy, public policy, and to avoid confusion between civil and probate courts is not without force. In the instant case, however, the question is whether issues of judicial economy and policy should be decided by the courts or the legislature." Here, he argues, the statutory language is clear and applying stare decisis rather than the statute would be legislating from the bench.

This court recently determined the propriety of following established precedent, stating:

> We must, however, follow the precedent set by the supreme court, and are powerless to overrule its decisions. *Brewer v. State,* 68 Ark. App. 216, 6 S.W.3d 124 (1999). Further, under the doctrine of stare decisis, the appellate courts are bound to follow prior case law. *Chamberlin v. State Farm Mut. Auto. Ins. Co.,* 343 Ark. 392, 36 S.W.3d 281 (2001). The policy of stare decisis is designed to lend predictability and stability to the

law. *Id.* It is well settled that precedent governs until it gives a result that is so patently wrong or manifestly unjust that a break becomes unavoidable. *Id.* The test is whether adherence to the rule would result in great injury or injustice. *Id.* This is not such a case.

*Rice v. Ragsdale,* 104 Ark. App. 364, 368, 292 S.W.3d 856, 860 (2009).

Likewise, the case before us is not one where adherence to the rule would result in great injury or injustice. We hold that *Dodson, supra,* is determinative, as the facts in *Dodson* are materially the same facts as exist in the case at hand. The *Dodson* court stated:

> The appellants did not file a claim against the Harrison Estate relating to their injury and death but rather filed their negligence actions against the Estate in circuit court. Dodson did, however, serve the administrator of the Harrison Estate with her complaint in circuit court within 90 days of the first publication of notice. In response, the Harrison Estate interpled the policy limits of $50,000 from Harrison's liability carrier, Progressive Insurance company. Ruling on the Harrison Estate's motion from the bench, the trial court stated that the Statute of Non–Claim only required that notice be given to the estate's administrator and did not require the actual filing of a claim against the Estate. The statute was satisfied, according to the trial court, by filing the negligence complaint in circuit court and by serving the Estate. We disagree.
>
> In interpreting statutes, we give the words their plain, customary, and ordinary meaning. *See Leathers v. Cotton,* 332 Ark. 49, 961 S.W.2d 32 (1998); *Munson v. State,* 331 Ark. 41, 959 S.W.2d 391 (1998). The Statute of Non–Claim re-

quires that ordinary claims against an estate must either be verified to the personal representative or filed with the probate court within three months of the first publication of notice. Act 929 of 1989 added a sentence to the statute, and the meaning of the sentence is absolutely clear. Injury and death claims must be filed with the estate within six months from the date of the first publication of notice in order for the probate estate to be liable. Otherwise, they are barred. The General Assembly obviously wanted to make certain that claims for injury and death were actually filed with the probate court within the sixth-month period to give a clear cut off date for such claims and to enable the personal representative to close the estate, if feasible.

*Dodson,* 335 Ark. at 110, 983 S.W.2d at 105–06.

Massey's argument—that because he was not actually served with the notice after first publication as per Arkansas Code Annotated section 28–40–111(a)(4), he has two years to bring his claim as per Arkansas Code Annotated section 28–50–101(h)—was argued in *Dodson* and addressed by the sole dissenting judge in that opinion. Nevertheless, the majority implicitly rejected this argument and ruled that the claim was barred because of the very clear directives contained in the statute of non-claim.

■ *Dodson* was decided in 1998, and since that time the General Assembly has not amended the statutes applicable herein to compel a result different than is required by *Dodson.* It is well settled that any interpretation of a statute by the supreme court subsequently becomes a part of the statute itself. *Pifer v. Single*

*Source Transp.,* 347 Ark. 851, 69 S.W.3d 1 (2002). The General Assembly is presumed to be familiar with the supreme court's interpretations of its statutes, and if it disagrees with those interpretations, it can amend the statutes. *Id.* Without such amendments, the supreme court's interpretations of the statutes remain the law. *Id.* The General Assembly's silence over a long period gives rise to an arguable inference of acquiescence or passive approval to the court's construction of the statute. *Chamberlin v. State Farm Mut. Auto. Ins. Co.,* 343 Ark. 392, 36 S.W.3d 281 (2001). It will not be presumed that the legislature intended to require the court to pass again upon a subject where its intent is not expressed in unmistakable language. *Rice, supra.*

Accordingly, the trial court's ruling in the instant case is affirmed.

KINARD and GLOVER, JJ., agree.